CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUL 27 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| MARVIN W. LOVELACE, | ) CASE NO. 4:11CV00056 |
| Plaintiff, | ) |
| v. | ) REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) By: B. Waugh Crigler |
| Defendant. | ) U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's June 19, 2009 protectively-filed application for supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. § 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated July 30, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since June 19, 2009, his application date.[1] (R. 20.) The Law Judge determined plaintiff's hypertension, moderate depression, and mild

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Supplemental security income is payable the month following the month in which the application was filed. 20 C.F.R. § 416.335.

1

mental retardation were severe impairments. (R. 20.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 20-22.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of medium work with several limitations.[2] (R. 22-25.)

The Law Judge relied on portions of the testimony of Adina P. Leviton, Ph.D., a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 25-27, 44-48.) Based on this testimony, the Law Judge determined that plaintiff was unable to perform his past relevant work as a railroad laborer. (R. 25.) However, he found that a significant number of alternate jobs exist in the national economy which could be performed by a person with plaintiff's RFC. (R. 26-27.)

Plaintiff appealed the Law Judge's July 30, 2010 decision to the Appeals Council. (R. 1-5, 13-14.) In its October 6, 2011 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial

---

[2] Medium work is defined in 20 C.F.R. § 404.1567(c) as involving lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she can also do sedentary and light work. The Law Judge included the additional limitations that plaintiff can perform only simple, repetitive tasks, should avoid written reports or instructions, and may require assistance in the work place, with only moderate restrictions in ability to handle stress. (R. 25.)

2

evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff raises a single question here; namely, whether the Law Judge's determination that plaintiff did not suffer from a listed impairment is supported by substantial evidence. (Dkt. No. 11, at 5.) Plaintiff argues that he meets Listing 12.05 (B).[3] He argues that his educational background, the assessment done by Frank Russell, Ph.D., a consultant engaged by the agency, and the results of the only IQ test of record clearly establish that he is disabled as a matter of law.

The answer to this question hinges on Dr. Russell's Psychological Assessment. (R. 270-277.) Plaintiff was administered a Wechsler Adult Intelligence Scale, Fourth Edition, ("WAIS-IV") test. (R. 275.) Notably, this test was not administered by Dr. Russell but, instead, by Bill Brown, Ph.D, a school psychologist for the Danville City School System. (R. 275.) The test results indicated that plaintiff had a Verbal Comprehension Index of 52, a Perceptual Reasoning

---

[3] Section 12.05 of the Listings specifies that mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. To meet the required level of severity, a claimant must demonstrate that at least one of four criteria is met. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Criteria B requires a valid verbal, performance, or full scale IQ of 59 or less. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05 (B).

3

Index of 50, a Working Memory Index of 50, a Processing Speed Index of 50, and a Full Scale IQ score of 42, placing him in the moderately retarded range of intellectual functioning. (R. 275.) Dr. Russell did not opine as to the validity of the test, but he did find that plaintiff's Global Assessment of Functioning score ("GAF") was 49, indicating serious mental impairments.[4] (R. 277.) However, Dr. Russell diagnosed plaintiff with mild mental retardation, rather than the moderate retardation indicated by the test results, which could suggest that he did not give full credit to those test results.[5] (R. 275-276.) Moreover, Dr. Russell opined, "There is no reason why (plaintiff) cannot perform simple and repetitive tasks, if they were well instructed and overlearned." (R. 276.) He also noted that plaintiff was capable of maintaining a regular work schedule on a consistent basis without interruptions, need for additional supervision, or problems with instruction, but that he may need some assistance dealing with "the usual stressors encountered in a competitive work place." (R. 276.) These findings could be read to suggest that Dr. Russell did not believe plaintiff was as impaired as the WAIS-IV test results indicated.[6]

The Fourth Circuit recently addressed these matters in *Hancock v. Astrue*, 667 F.3d 470 (4th Cir. 2012). The court found that "an ALJ has the discretion to assess the validity of an IQ

---

[4] The GAF is a numeric scale ranging from zero to one hundred used to rate social, occupational, and psychological functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) ("DSM–IV"). A GAF of 41 to 50 indicates the individual has serious symptoms or serious difficulty in social, occupational, or school functioning. *Id.*

[5] Mild mental retardation is typically used to describe individuals with an IQ of 50-55 to approximately 70. *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002), *quoting* DSM-IV, 42-43 (4th ed. 2000).

[6] Plaintiff's GAF score would normally indicate that he was not capable of competitive employment, but, as the Law Judge found, Dr. Russell's findings of moderate depression and mild mental retardation, along with his opinion that plaintiff could perform simple and repetitive tasks and maintain a regular work schedule, do not support a finding that plaintiff is disabled as a result of his mental impairments. (R. 25, 276-277.) Therefore, the Law Judge's finding that this GAF score is inconsistent with the record is supported by substantial evidence.

Case 4:11-cv-00056-JLK-BWC Document 15 Filed 07/27/12 Page 4 of 6 Pageid#: 357

test result and is not required to accept it even if it is the only such result in the record."[7] *Id.* at 474. The court pointed to the Law Judge's findings that the examiner failed to attest to the validity of the test results and that the results were inconsistent with the claimant's actual functioning and the notes of treating psychiatrists, and the court concluded that this evidence provided substantial support for the Law Judge's decision to reject the claimant's IQ scores. *Id.* at 473-475.

Here, the Law Judge found that plaintiff did not have a valid verbal, performance, or full scale IQ of 59 or less. (R. 22.) In support thereof, the Law Judge pointed out that plaintiff was able to maintain employment for ten years as a laborer with the railroad, and that there was evidence that plaintiff may not have put forth his best effort during testing. (R. 22.) The Law Judge also relied on the fact that the record shows plaintiff can pay his bills, count change, manage a savings account, and shop for groceries, as well as on Dr. Russell's findings that plaintiff suffers from moderate depression and mild mental retardation. (R. 24-25.) Furthermore, Dr. Russell indicated that plaintiff could maintain a regular work schedule, and his diagnosis of mild mental retardation is in contrast with the moderate mental retardation indicated by the test results. (R. 275-276.) Finally, Dr. Russell found that the reliability of the information provided by plaintiff was poor, which was demonstrated by plaintiff's hearing testimony that he could not read or write, despite a record that he could. (R. 35, 138, 151-161, 275.) Accordingly, the evidence considered by the Law Judge, along with the other evidence of record, provides sufficient support for the Law Judge's rejection of plaintiff's IQ score. Accordingly, his finding

---

[7] In doing so, the Court of Appeals pointed out that its sister circuits had already permitted Law Judges to reject IQ scores in certain circumstances. *See Lax v. Astrue*, 489 F.3d 1080, 1086–87 (10th Cir. 2007); *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003); *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998); *Muse v. Sullivan*, 925 F.2d 785, 789–90 (5th Cir. 1991); *Popp v. Heckler*, 779 F.2d 1497, 1499–1500 (11th Cir. v1986).

Case 4:11-cv-00056-JLK-BWC Document 15 Filed 07/27/12 Page 5 of 6 Pageid#: 358

that plaintiff did not meet or medically equal Listing 12.05 (B) is supported by substantial evidence.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, DENYING plaintiff's motion for summary judgment and motion to remand, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ 
U.S. Magistrate Judge

7-27-2012

Date